```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
TOYOTA TSUSHO AMERICA, INC.,         :    08 Civ. 10114 (LAP)
                                     :
                    Plaintiff,       :
                                     :         ORDER
     -against-                       :
                                     :
MICHAEL J. SIEGEL et al.,            :
                                     :
                    Defendants.      :
------------------------------------X
```

LORETTA A. PRESKA, Chief United States District Judge:

    Plaintiff Toyota Tsusho America, Inc. ("TAI") brought this action seeking damages for conversion and fraud in its transactions with Defendants Michael J. Siegel and Robert Bruggerman. Neither defendant responded to the complaint; accordingly, a default judgment was entered against both defendants. On December 8, 2009, Magistrate Judge Gorenstein issued a Report and Recommendation (attached) pursuant to an Order of Reference for an Inquest after Default. (See dkt. no. 6.) Objections to that Report and Recommendation were due within fourteen days. See Fed. R. Civ. P. 72(b). No objections were submitted.

    In the absence of objections, the Report and Recommendation is reviewed for clear error. See id. advisory committee's note; see also 28 U.S.C. 636(b)(1)(C); PSG Poker, LLC v. DeRosa-Grund, 06 Civ. 1104 (DLC), 2008

1

U.S. Dist. LEXIS 62379 (S.D.N.Y. August 15, 2008). Having received no objections and finding no clear error in Magistrate Judge Gorenstein's well-reasoned recommendation, his Report and Recommendation is hereby adopted.

The Clerk of Court shall enter judgment against defendant Siegel for $4,192,514 in compensatory damages, together with interest calculated at the rate of nine percent per year on a principal amount of $4,192,514, running from November 17, 2007 through the date of judgment. The Clerk of Court is further directed to mark this action closed and all pending motions denied as moot.

SO ORDERED.

Dated:   New York, New York
         January 7, 2010

                              LORETTA A. PRESKA,
                              CHIEF U.S.D.J.

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TOYOTA TSUSHO AMERICA INC,

                          Plaintiff,            :     08 Civ. 10114 (LAP) (GWG)

           -against-                            :     REPORT AND
                                                      RECOMMENDATION
MICHAEL J. SIEGEL et al.,                       :

                          Defendants.           :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/8/09

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Toyota Tsusho America, Inc. ("TAI") brings this action seeking damages for conversion and fraud against defendant, Michael J. Siegel.[1] TAI alleges that Siegel fraudulently obtained approximately $4,250,000 of TAI's money and sold TAI's property to third parties for his own gain. Because Siegel failed to answer the complaint, he is in default. For the reasons stated below, TAI should recover $4,192,514 in actual damages as well as prejudgment interest.

I.   BACKGROUND

TAI filed a complaint against Siegel and Bruggeman alleging conversion, fraud, intentional interference with a contract, unjust enrichment, and fraudulent transfer. See Compl. ¶¶ 136-42, 143-49, 150-54, 155-58, 159-63. While proof of service was filed as to Siegel and Bruggeman, see Return of Service, filed Dec. 30, 2008 (Docket ## 3, 4), neither defendant answered the complaint. As a result, a default judgment was entered against Siegel

---

[1] The complaint also names Robert Bruggeman as a defendant. Complaint, filed Nov. 11, 2008 (Docket # 1) ("Compl.") ¶ 4. On September 14, 2009, however, TAI notified the Court that Bruggeman had filed for bankruptcy on July 20, 2009. See Suggestion of Bankruptcy, filed Sept. 14, 2009 (Docket # 10), at 1-2. This filing operates as an automatic stay with regard to "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). Accordingly, we address only damages attributable to Siegel.

and Bruggeman, and the case was referred to the undersigned to determine damages. See Default Judgment, filed Feb. 10, 2009 (Docket #5); Order of Reference to a Magistrate Judge, filed Mar. 30, 2009 (Docket # 6).

By order dated March 30, 2009, this Court directed TAI to submit proposed findings of fact and conclusions of law regarding damages. See Scheduling Order for Damages Inquest, filed Mar. 31, 2009 (Docket # 7) ("March 30 Order") ¶ 1. TAI served and filed proposed findings seeking to recover $4,202,514 in actual damages, $2,000,000 in punitive damages, and $581,328.58 in prejudgment interest. See Proposed Findings of Fact and Conclusions of Law, filed May 14, 2009 (Docket # 8) ("Pl. Prop.") ¶ 127. Siegel's response was due on June 15, 2009. See March 30 Order ¶ 2. Siegel, however, has not made any response to TAI's submission or made any other contact with the Court.

Following a request from the Court for further briefing, TAI withdrew its request for punitive damages. See Letter, filed Nov. 18, 2009 (Docket # 12), at 4.

## II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

In light of Siegel's default, TAI's properly-pleaded allegations, except those relating to damages, are accepted as true. See, e.g., Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993) ("factual allegations are taken as true in light of the general default judgment"); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Time Warner Cable of N.Y. City v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998). The following findings of fact and conclusions of law are based on the allegations in the complaint regarding liability and the admissible evidence regarding damages in TAI's submissions.

2

In its complaint, TAI raises five claims for relief: conversion of collateral, see Compl. ¶¶ 136-42; fraud, id. ¶¶ 143-49; intentional interference with a contract, id. ¶¶ 150-54; unjust enrichment, id. ¶¶ 155-58; and fraudulent transfer, id. ¶¶ 159-63. Because TAI's proposed findings seek damages only for conversion and fraud, see Pl. Prop. ¶¶ 104-26, we limit our discussion to those claims.

A. Facts Relating to Liability

TAI is a publicly-traded New York corporation "engaged in . . . the purchase of certain [platinum group metals] (platinum, palladium, and rhodium) [collectively, "PGM"] . . . derived from catalysts extracted from used automotive catalytic converters ("Converters")." Compl. ¶¶ 2, 16. Since approximately March 14, 2005, TAI engaged in business transactions with Midwest Core & Catalytics, LLC ("Midwest"), a limited liability company organized under Illinois law, whose members were Siegel and Bruggeman. See id. ¶¶ 6-7, 17. During this time, Siegel "was the managing member of Midwest." Id. ¶ 8.

In March 2005, TAI entered into two contracts with Midwest governing the refinement of converters and TAI's purchase of PGM from Midwest. See id. ¶¶ 17-19. Siegel negotiated and executed both contracts on behalf of Midwest. See id. ¶ 20. Pursuant to these agreements, TAI would advance Midwest the funds to purchase converters. See id. ¶¶ 21-22. Midwest would then extract PGM of marketable quality and ship it to TAI's testing facility in Burlington, New Jersey. See id. ¶¶ 22-23. TAI would then make a provisional payment of 70% "of the value of the PGM that Midwest estimated to be in a Shipment (the 'Provisional Payment')." Id. ¶ 24. After processing and testing, "TAI would pay Midwest the difference between 88% of the value of the PGM . . . and the Provisional Payment[,]" and "then [would] purchase the PGM from

3

Midwest" to sell to its own customers. Id. ¶¶ 26-28.

On December 2, 2005, TAI and Siegel negotiated and executed a third agreement formalizing the process by which TAI advanced Midwest the funds to purchase converters on TAI's behalf. See id. ¶¶ 29-30; Letter to Mickey Siegel (December 2, 2005) (annexed as Ex. C to Declaration of Farid Saada, filed May 14, 2009 (Docket # 9) ("Saada Decl.")) ("December 2005 Contract"), at 1. This agreement dictated that Midwest was obligated to purchase converters and ship them to TAI within 45 days of receiving funds advanced by TAI. See Compl. ¶¶ 30-31. The contract also provided that TAI would obtain a purchase money security interest in the converters and PGM product, which it perfected by filling a UCC-1 financial statement and notifying Bank Financial, Midwest's lender. See id. ¶¶ 33-37. As part of the process, Siegel would orally represent to Farid Saada, TAI's Assistant Vice President, that Midwest had acquired or would acquire "specific quantities of Converters" – an assurance which TAI relied upon in transmitting the funds. Id. ¶¶ 41-43.

Between March 2005 and November 2007, "TAI and Midwest executed approximately" 61 transactions under this process during which Midwest "sold and delivered approximately $39,000,000 worth of PGM to TAI." Id. ¶¶ 38-39.

Siegel, however, mismanaged Midwest's business transactions and by 2007 the company was insolvent. See id. ¶¶ 48-61, 137. As a result, Midway was unable to repay TAI its advances and became indebted to TAI for approximately $3,000,000 "over and above" the value of Midwest's inventory. Id. ¶¶ 59-62. Notwithstanding the debt, Siegel "continued to draw large 'profit share' payments from Midwest." See id. ¶ 61.

Beginning in the fall of 2007, Siegel and Bruggeman undertook a scheme to defraud TAI.

4

See id. ¶¶ 62-65. In short, they used TAI's advances to purchase significant quantities of converters which they then sold to other buyers "in order to raise liquid funds." Id. ¶¶ 65-66. Siegel and Bruggeman planned to withdraw the sale profits from Bank Financial and then "collapse" Midwest. See id. ¶¶ 66-67.

Under this scheme, Siegel would contact TAI to request an advance of a certain sum for Midwest to purchase converters. See, e.g., id. ¶ 69. On or about the same day, Siegel would confirm the advance and its purpose to TAI in writing. See, e.g., id. ¶ 70. TAI would then transfer the amount requested to Midwest's account at Bank Financial in reliance on the request and confirmation. See, e.g., id. ¶ 72. Between September 25, 2007 and January 8, 2008, TAI made nine advances to Midwest believing Siegel would use the funds to purchase converters consistent with his obligations under the December 2005 Contract. See id. ¶¶ 69-125. These advances totaled $4,250,000. See id. ¶¶ 69, 73, 77, 81, 95, 99, 103, 107, 124.

Instead of shipping the converters to TAI's designated refiner, however, Siegel resold the converters to two separate companies: Techemet, LLC ("Techemet") and Multimetco, Inc ("Multimetco") for a profit of $3,000,000. See id. ¶¶ 116-18.

A chronology of Siegel's requests and written confirmations, including some dates that are approximated, are listed in the chart below:

| Request | Written Confirmation | Amount | Shipment Number | Citation |
|---|---|---|---|---|
| 9/25/2007 | 9/26/2007 | $500,000 | 62 | Compl. ¶¶ 69-72 |
| 10/4/2007 | 10/5/2007 | $500,000 | 63 | Compl. ¶¶ 73-76 |
| 10/15/2007 | 10/15/2007 | $500,000 | 64 | Compl. ¶¶ 77-80 |
| 10/29/2007 | 10/29/2007 | $500,000 | 65 | Compl. ¶¶ 81-84 |
| 11/13/2007 | 11/13/2007 | $500,000 | 65 | Compl. ¶¶ 95-98 |

5

| | | | | | |
|---|---|---|---|---|---|
| 11/20/2007 | 11/21/2007 | $500,000 | 66 | | Compl. ¶¶ 99-102 |
| 12/3/2007 | 12/3/2007 | $500,000 | 67 | | Compl. ¶¶ 103-06 |
| 12/19/2007 | 12/20/2007 | $500,000 | 68 | | Compl. ¶¶ 107-12 |
| 1/8/2008 | 1/8/2008 | $250,000 | 68 | | Compl. ¶¶ 124-27 |

Each of Siegel's requests and written confirmations listed above were "fraudulent because Siegel did not intend to cause Midwest to make" these shipments to TAI. Id. ¶¶ 71, 75, 79, 83, 97, 101, 105, 109, 126.

On or about November 1, 2007, Saada met with Siegel in person at Midwest's facilities in Maywood, Illinois to "reconcile the monies owed to TAI by Midwest with the inventory of Converters and Product" that Midwest possessed at that time. Id. ¶¶ 85-86. At that meeting, Siegel "reassured Saada that the business was fundamentally sound and that shipments of Product from Midwest would resume shortly." Id. ¶ 87. Siegel also misrepresented Midwest's financial position, claiming the company's inventory was valued at $1,600,000 and that it had $600,000 on deposit at Bank Financial. See id. ¶¶ 89-93. In truth, Midwest's deposit "had a negative balance on November 1, 2007 . . . [and] Siegel had no intention of holding the Inventory on hand in trust for TAI . . . ." Id. ¶¶ 92-93.

Around January 8, 2008, Saada contacted Siegel again to inquire why no converters were shipped in December 2007 as scheduled. See id. ¶ 120. Once again Siegel made false representations to Saada claiming that the delay was due "to the death of . . . [the] plant['s] foreman and the weather, and falsely assured Saada that production at Midwest would shortly resume." Id. ¶ 121. However, Siegel's excuses were misleading as Midwest "continued to ship [convertors] to Multimetco" during this period notwithstanding these alleged difficulties. Id.

6

¶ 122.

"On March 10, 2008[,] Midwest made a Voluntary Assignment for the Benefit of Creditors and ceased" business operations. Id. ¶ 131. At the time Midwest started to dissolve, it was indebted to TAI in the amount of $4,600,000. Id. ¶ 132.

B. Discussion

In its briefing, TAI has sought damages for fraud and conversion. Id. ¶ 106. It is unnecessary to address the conversion claim, however, because each claim seeks the same damages. See id.; Indu Craft, Inc. v. Bank of Baroda, 47 F.3d 490, 497 (2d Cir. 1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery."). To prove a claim of fraud under New York law, a plaintiff must show that the defendant: (1) made material misrepresentations, (2) which he knew to be false, (3) possessing the intent to defraud, (4) that "plaintiff reasonably relied on the misrepresentation, and (5) suffered damage as a result of the misrepresentation." Kaye v. Grossman, 202 F.3d 611, 614 (2d Cir. 2000) (citation and internal quotation marks omitted); see also N.Y. City Transit Auth. v. Morris J. Eisen, P.C., 276 A.D.2d 78, 85 (1st Dep't 2000) ("An actionable fraud claim requires proof that defendant made a misrepresentation of fact which was false and known to be false. It also requires a showing that the misrepresentation was made with the intent to induce another party's reliance upon it.").

In addition, the plaintiff must provide sufficient detail and specificity in its complaint to comply with the heightened pleading requirement in Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a plaintiff to: "(1) specify the statements that [it] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why

7

the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). While "the fraud alleged must be stated with particularity . . . the requisite intent of the alleged speaker of the fraud need not be alleged with great specificity." Chill v. Gen. Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996) (citations omitted). Nonetheless, a plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." Lerner, 459 F.3d at 290 (quoting Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)); see also Fed. R. Civ. P. 9(b) ("[A] party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

In its complaint, TAI specifies nine separate instances in which Siegel asked TAI to advance Midwest between $250,000 and $500,000 for the stated purpose of purchasing and shipping converters on TAI's behalf. See Compl. ¶¶ 69, 73, 77, 81, 95, 99, 103, 107, 124. On each occasion, Siegel sent written confirmations to TAI reiterating "that the purpose of this Advance was to accrue Converters" to be shipped to TAI in December 2007. Id. ¶¶ 70, 74, 78, 82, 96, 100, 104, 110, 125. Nevertheless, after Siegel "knowingly and purposefully" transmitted each of these requests and confirmations, he improperly used TAI's funds to purchase and resell converters for his own gain. See id. ¶¶ 117-19, 138, 144-49. Morever, on November 1, 2007 and January 8, 2008, Siegel falsely represented to Saada that Midwest was accruing a substantial stock of converters on TAI's behalf and that any shipment delays were on account of weather and warehouse difficulties. See id. ¶¶ 85-94, 120-23. "Siegel intended that TAI rely on such misrepresentations in making Advances and not seeking immediate recovery of prior Advances." Id. ¶ 146. TAI points to Siegel's resale of converters to Multimetco and Techemet to support a

8

finding of fraudulent intent. See id. ¶ 138.[1]

In addition, Siegel is personally liable for acts constituting fraud under New York's "commission of a tort" doctrine even though he was a corporate officer of Midwest. See Peguero v. 601 Realty Corp., 58 A.D.3d 556, 559 (1st Dep't 2009). "[A] corporate officer who participates in the commission of a tort may be held individually liable, <u>regardless of whether the officer acted on behalf of the corporation in the course of official duties</u> and regardless of whether the corporate veil is pierced." Id. at 558 (quoting Espinosa v. Rand, 24 A.D.3d 102, 102 (1st Dep't 2005)) (emphasis in original); see also Polonetsky v. Better Homes Depot, Inc., 97 N.Y.2d 46, 47-48 (2001) (recognizing personal liability of a corporate officer in actions for fraud).

III. DAMAGES

    A.    Actual Damages

TAI submits that as a result of Siegel's fraud and conversion of TAI's funds and collateral, it incurred actual damages of $4,202,514. See Saada Decl. ¶¶ 95, 109-11. It states that the total funds advanced to Siegel for the purchase of converters between September 2007

---

[1] While "a claim for fraud cannot be maintained where it arises out of the same facts as a breach of contract claim with the sole additional allegation that the defendant never intended to fulfill its express obligations," Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc., 2009 WL 3152874, at *7 (S.D.N.Y. Sept. 29, 2009) (citation and internal quotation marks omitted), such claims may be brought in a number of instances, including "where there is a fraudulent misrepresentation collateral or extraneous to the contract . . . ." Spencer Trask Software & Info. Serv. LLC v. RPost Int'l. Ltd., 383 F. Supp. 2d 428, 453 (S.D.N.Y. 2003) (citation omitted). "A representation is collateral to a contract when it pertains to present facts and not promissory statement[s] of what will be done in the future." Ho Myung Moolsan Co., 2009 WL 3152874, at *7 (citation and internal quotation marks omitted) (alternation in the original). Here Siegel's misrepresentations were not future promises seeking to induce TAI to enter into a contract, but rather misrepresentations of Siegel's present intention as to what he would be doing with TAI's advances.

and January 2008 amounted to $4,250,000. See id. ¶ 95. TAI states that it is deducting from this amount a "token shipment of" converters that Midwest made to TAI valued at $57,486, see id. ¶¶ 110-11. However, the $57,486 deduction results in an actual damages total of $4,192,514.

### B. Pre-Judgment Interest

TAI seeks prejudgment interest of 9% pursuant to N.Y. C.P.L.R §§5001-02 with respect to its fraud and conversion claims. Pl. Prop. ¶¶ 120, 123. "In a diversity case, state law governs the award of prejudgment interest." Schipani v. McLeod, 541 F.3d 158, 164 (2d Cir. 2008) (citing Baker v. Dorfman, 239 F.3d 415, 425 (2d Cir. 2000)). State law provides that prejudgment interest of 9% is to be awarded for claims arising from "an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." §§ 5001, 5004. This provision governs claims for fraud. See, e.g., Mallis v. Bankers Trust Co., 717 F.2d 683, 694-95 (2d Cir. 1983); Healing Power, Inc. v. Ace Cont'l. Exp., Ltd., 2008 WL 4693246, at *9 (E.D.N.Y. Oct. 17, 2008).

The starting date from which the court computes interest is "the earliest ascertainable date the cause of action existed . . . ." § 5001(b). However, "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." Id.; see also Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 91 (2d Cir. 1998) ("New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date.'" (quoting 155 Henry Owners Corp. v. Lovlyn Realty Co., 231 A.D.2d 559, 647 (2d Dep't 1996)).

TAI's actual damages of $4,192,514 accrued over nine transfers of between $250,000

10

and $500,000 from September 2007 until January 2008. TAI proposes a midpoint date of November 17, 2007, see Pl Prop. ¶ 125, which the Court accepts as reasonable. Thus, TAI is entitled to interest of $1,033.06 per day starting on November 17, 2007.[2]

Conclusion

For the reasons set forth above, TAI should be awarded $4,192,514 in actual damages, with interest from November 17, 2007 until the date of judgment at a rate of $1,033.06 per day.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Loretta A. Preska, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Preska. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: December 8, 2009
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[2] $4,192,514 multiplied by .09 equals $377,326.26 in annual interest, which divided by 365.25 days results in $1,033.06 in interest per day.

11

Copies sent to:

Bruce S. Goodman
Stuart A. Krause
Zeichner Ellman & Krause LLP
575 Lexington Avenue
New York , NY 10022

Saul L. Glass
The Law Offices of Saul L. Glass
1 Barker Avenue, Suite 425
White Plains , NY 10601

Michael J. Siegel
36681 N. 105th Way
Scottsdale, Arizona 85262